UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
:
ROLANDO ROMERO, :
:
                              Plaintiff, :
:  **MEMORANDUM DECISION AND**
                - against - :  **ORDER**
:
CITY OF NEW YORK; FDNY FIRE :  16 Civ. 4157 (BMC)
DEPARTMENT OF NEW YORK, :
MICHAEL GALA, THOMAS BRADLEY, :
CHARLES BARRACO, and JOHN AND :
JANE DOES, :
:
                           Defendants. :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff, a firefighter formerly employed by the Fire Department of the City of New York ("FDNY"), has brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1983, 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-703 ("NYCHRL"), against the City of New York, the FDNY, FDNY employees Michael Gala, Thomas Bradley, and Charles Barraco, in their individual and official capacities, and unnamed FDNY Jane and John Doe defendants. He claims that he suffered discrimination, a hostile work environment, and retaliation on the basis of his race and for filing internal complaints with the FDNY's Equal Employment Opportunity ("EEO") office. The named defendants have moved to dismiss the complaint, and for the reasons stated below, I grant defendants' motions.

**SUMMARY OF COMPLAINT**

Plaintiff is a 34-year old Hispanic male who was hired by the FDNY on June 11, 2006. Plaintiff acknowledges that his appointment predated any of the allegations regarding FDNY's racially-motivated hiring practices, as are at issue in <u>United States & Vulcan Society, Inc. v. City of New York</u>, 07 Civ. 2067 (NGG) (the "<u>Vulcan</u> litigation"). In that case, the United States and the Vulcan Society alleged that the entrance exams used by the FDNY were biased against minority applicants. Plaintiff acknowledges that initially he was treated like any newly-assigned probationary firefighter; however, he alleges that he became a target for hostility once his colleagues became aware that he was supportive of the plaintiffs in the <u>Vulcan</u> litigation.

Plaintiff broadly alleges that FDNY employees subjected him to discrimination, hostility, and harassment because of his race. He alleges that he was subjected to "racial slurs being used within earshot;" "being systematically ignored and shunned by his colleagues;" rude and abrupt interactions "without any pleasantries or civilities;" assignments to inferior positions of duty; and retaliatory charges of misconduct. Plaintiff alleges that he was refused "mutuals," or the switching of work shifts and other favors; that no one would check the rig when plaintiff was working on it; and that he was regularly called a "skell," which plaintiff defines as "a New York-centric, derogatory term used to describe someone as a lowlife or crook." Plaintiff nowhere alleges that the term has any racial connotation, however.

In the winter of 2008, plaintiff made his first complaint of discrimination with FDNY's EEO, alleging a hostile work environment, discrimination, and disparate treatment because of his race. The complaint in this Court does not give any of the specifics that were contained in plaintiff's 2008 administrative filing with the EEO. In any event, the EEO ruled that plaintiff's first complaint was unfounded. In 2010, plaintiff again complained to the EEO. Plaintiff's

complaint in this Court again contains no recitation of the allegations he made in his 2010 complaint, but plaintiff alleges that his superior officer advised him to file his 2010 EEO complaint. The EEO determined that plaintiff's second complaint was also unfounded.

Plaintiff alleges that after these two unsuccessful EEO complaints, the FDNY began to retaliate against him. For example, plaintiff alleges that the FDNY "exaggeratedly monitored plaintiff's arrival times in the morning, allowing his Caucasian colleagues to arrive late but sign in as though they had arrived on time," while plaintiff was written up for the same conduct. Plaintiff alleges that the retaliatory treatment caused him to cease participating in mealtimes, which he describes as the most important part of teambuilding. Plaintiff further alleges that he was subjected to frequent and direct racial slurs.

In early 2011, following an incident with colleagues who plaintiff alleges accosted and racially berated him, plaintiff was transferred out of his Ladder Company[1] to FDNY Headquarters, where he alleges he was subjected to disparate treatment, constant monitoring, rudeness, and hostility. Plaintiff alleges this conduct was retaliation, and the retaliation "was coming from the highest echelons" of the FDNY. Plaintiff alleges that his every move was scrutinized and that he was forced to adhere to policies that others were permitted to disregard.

There appears to be a gap in time in the complaint, but plaintiff alleges that in July 2013, as a result of being out of the firehouse for more than six months, plaintiff was made to attend retraining, during which he describes the instructors as having been rude, hostile, intimidating, and condescending. Further, on or about July 11, 2013, as part of the retraining, plaintiff's cohort undertook a firefighter removal drill, which is normally done with a fog machine or

---

[1] The FDNY is comprised of fire companies, and there are six types of companies: (i) Engine Companies, (ii) Ladder Companies, (iii) Rescue Companies, (iv) Squad Companies, (v) Marine Companies, and (vi) the Haz-Mat Company. FDNY's Ladder Companies are tasked with search and rescue, forcible entry, and ventilation at the scene of a fire, and there are currently 143 Ladders in the FDNY.

burning hay, but during this retraining, wood pallets were set on fire. Plaintiff alleges that he was positioned dangerously close to the fire and that, as the instructors stood by laughing, the flames started burning the firefighters, with plaintiff suffering second degree burns on his back and shoulders, requiring four months of medical leave. When plaintiff returned in November 2013, he was returned to Headquarters. That same month, he was told he would be transferred back to his Ladder, but the next day was told that the transfer was no longer happening. On May 1, 2014, plaintiff was terminated.

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

To determine if a motion to dismiss for failure to state a claim is appropriate, the Court must "accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). When considering a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Id. (internal

4

quotation marks omitted). Although the Court must "take all of the factual allegations in the complaint as true" for the purpose of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1950.

Plaintiff alleges, pursuant to Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1981, NYSHRL, and NYCHRL, causes of action for discrimination, hostile work environment, and retaliation on the basis of his race and for filing internal FDNY EEO complaints. The complaint against all defendants is dismissed for the following reasons: (i) the FDNY is an improper defendant; (ii) the claims under 42 U.S.C. § 1981 are encompassed by the claims under 42 U.S.C. § 1983; (iii) the statutes of limitations bar consideration of most of the complained-of conduct; and (iv) the complaint fails to state a claim for relief.

## I. The FDNY is an Improper Defendant.

The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. As a result of this provision, the cases have uniformly held that the FDNY is not a suable entity. See, e.g., Fahey v. City of New York, No. 10 CIV. 4609, 2012 WL 413990, at *5 (E.D.N.Y. Feb. 7, 2012) ("As an initial matter, summary judgment is granted on all claims brought against the FDNY because the FDNY – a municipal agency – cannot be subject to suit.").

Plaintiff's opposition argues that the FDNY may be sued because the "otherwise provided by law" exception applies here. Plaintiff argues that New York City Administrative Code § 13-377, entitled "Protection against fraud or mistake," cuts against defendants' argument. Section 13-377 provides that "[a]ny person who shall knowingly make any false statement, or

5

shall falsify or permit to be falsified any record or records of this pension fund, shall be guilty of a misdemeanor." N.Y.C. Admin. Code § 13-377. Plaintiff argues that this law is applicable because FDNY's actions, ostensibly in terminating plaintiff, "affected" plaintiff's pension rights.

This argument is meritless. The provision cited clearly has no application to the facts of the case here: it simply outlines misdemeanor fraudulent conduct. Moreover, if a law intended to create liability for an otherwise-not-suable entity, it would do so explicitly. See, e.g., Sossamon v. Texas, 563 U.S. 277, 284, 131 S. Ct. 1651, 1658 (2011) ("[O]ur test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. A State's consent to suit must be unequivocally expressed in the text of the relevant statute." (internal quotation marks and citations omitted)). Accordingly, the Court finds that, pursuant to the New York City Charter, the FDNY is an improper defendant and dismisses all claims against it.

## II.  Plaintiff's Claims Pursuant to 42 U.S.C. § 1981 Are Encompassed in His Claims Under 42 U.S.C. § 1983.

When the defendant is a state actor, 42 U.S.C. § 1983 is the exclusive remedy for violations of the rights guaranteed under 42 U.S.C. § 1981. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S. Ct. 2702, 2723 (1989) (holding "that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"). Here, the remaining defendants are a municipality and city agency personnel, and the allegations in the complaint relate to conduct in connection with their state roles.

Plaintiff's opposition concedes that the holding in Jett applies to defendant the City of New York and therefore does not object to the merging of his § 1981 and § 1983 claims with

6

respect to the City. Plaintiff, however, maintains that his claims against the named defendants are sufficient based on a "cat's paw" theory, whereby a defendant may be found individually liable where his conduct caused the state actor to retaliate. Plaintiff's argument fails.

As the Second Circuit has found, a plaintiff's § 1981 claims, whether against a municipality, state entity, or state employee, "are encompassed by [his] § 1983 claims, and both are therefore analyzed under § 1983." Gladwin v. Pozzi, 403 F. App'x 603, 605 (2d Cir. 2010). And this unification of claims is not limited to claims filed against an employee in his official capacity: "Jett has been interpreted to encompass not only governmental entities but also individuals sued in their individual capacities who are 'state actors.'" Roper v. Hynes, No. 05 CIV. 7664, 2006 WL 2773032, at *12 (S.D.N.Y. Sept. 27, 2006). Accordingly, the Court dismisses plaintiff's claims arising under 42 U.S.C. § 1981 as duplicative of his claims arising under 42 U.S.C. § 1983 against the City and the individual defendants.[2]

### III. The Complaint Is Barred in Part by the Applicable Statutes of Limitations.

The majority of the allegations in the complaint are time-barred by one or both of the applicable statutes of limitations. First, under Title VII, a plaintiff must file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or equivalent local agency "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed his charge of discrimination with the EEOC on April 24, 2014, and defendants therefore argue that his allegations concerning acts that took place prior to June 28, 2013, are time-barred under Title VII. Plaintiff's opposition does not contest this

---

[2] It is also worth mentioning that in any event, plaintiff has failed to plead sufficient facts to state a claim for relief under § 1981. Nowhere in the complaint does plaintiff articulate the basis for his claim; he merely states that the defendants interfered with his rights to enforce contracts. This is insufficient: "[A]s required by the plain text of the statute, we hold that a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.' Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 479-80, 126 S. Ct. 1246, 1252 (2006).

7

point, conceding that the events predating June 28, 2013, are offered to illustrate the pattern of treatment.[3]

With respect to the claims brought under 42 U.S.C. § 1983, NYSHRL, and NYCHRL, those claims are all governed by a three-year statute of limitations. Cloverleaf Realty v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009) (42 U.S.C. § 1983); Kassner, 496 F.3d at 238. (NYSHRL and NYCHRL). Plaintiff commenced this action on July 27, 2016. Accordingly, plaintiff's allegations concerning acts that took place prior to July 27, 2013, are similarly time-barred under 42 U.S.C. § 1983, NYSHRL, and NYCHRL. As a result of both limitations, the vast majority of plaintiff's allegations are time-barred, including all claims against defendant Michael Gala, as all of the factual allegations in the complaint relating to Gala concern the time period prior to June 6, 2013. Therefore, all claims against defendant Gala are dismissed.

**IV.     The Complaint Fails to State a Claim for Relief for the Remaining Claims.**

The only remaining defendants are the City of New York, Thomas Bradley, and Charles Barraco, and the only allegations left are (i) the July 11, 2013 incident where plaintiff was injured during a retraining exercise, arising under Title VII only; (ii) the November 2013 incident where plaintiff's transfer back to his Ladder was rescinded, arising under Title VII, 42 U.S.C. § 1983, NYSHRL, and NYCHRL; and (iii) plaintiff's termination from the FDNY effective May 1, 2014, arising under Title VII, 42 U.S.C. § 1983, NYSHRL, and NYCHRL. For the following reasons, the remaining claims are dismissed.

---

[3] The Court notes that Title VII's filing requirements are not a jurisdictional prerequisite to filing suit in federal court; rather, they are requirements that, like statutes of limitations, are subject to waiver, estoppel, and equitable tolling. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982). Because plaintiff did not raise these arguments and conceded the point, the Court need not engage in this analysis.

8

### A. The Complaint Fails to State a Claim Against Defendants Thomas Bradley and Charles Barraco.

As defendants accurately argued in their motion to dismiss, defendants Bradley and Barraco make no appearance in the factual allegation paragraphs of the complaint. They appear once under "Parties" and then under several of the "Causes of Action," for hostile work environment, discrimination, and retaliation under 42 U.S.C. § 1983, NYSHRL, and NYCHRL. Yet plaintiff's allegations in the "Causes of Action" are comprised of entirely conclusory allegations that each engaged in discriminatory and retaliatory conduct, allegations that fail to meet the pleading requirements. For example, plaintiff pleads that Bradley and Barraco, "under color of law, personally interfered with and deprived plaintiff of his constitutional rights, including the rights: to enjoy freedom of speech, to petition his government for redress of his grievances, to be secure in his person, to enjoy privacy, to be free from deprivation of life, liberty and property without due process of law." This does not come anywhere close to meeting the standards in Twombly and Iqbal.

Plaintiff's opposition did not include any semblance of a substantive argument in response. Rather, plaintiff begins his section in response with the following language: "The bane of all Plaintiff's civil rights litigators is the so called Plausibility standard." His only engagement with the instant action is to say that "the facts alleged in the complaint give the history leading up to Plaintiff's termination." That is as close as plaintiff comes to rebutting defendants' arguments, because the remainder of his section is devoted to "[t]he paramount example of what the City of New York claims is implausible[,] . . . the time honored 'Serpico' factor." Plaintiff concludes his summary of Frank Serpico's life with a parenthetical, advising that he has discussed this matter with Mr. Serpico. Plaintiff did not respond at all against defendants' arguments. Therefore, the claims against Bradley and Barraco are "deemed either

9

abandoned or, in any event, without merit," given that they fail to meet any pleading standard, much less a plausibility standard. Cortes v. City of New York, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015).

### B. The Complaint Fails to State a Claim Against Defendant the City of New York.

As stated above, only three events described in the complaint remain: (i) the July 11, 2013 retraining incident; (ii) the November 2013 rescission of plaintiff's transfer back to his Ladder; and (iii) plaintiff's termination from the FDNY effective May 1, 2014. All three are pled as retaliatory actions.

Without even having to reach the merits of the retaliation claims, the claims must be dismissed. Defendants argue, just as they did with respect to Bradley and Barraco, that the complaint lacks factual allegations suggesting that there was any retaliatory animus. Defendants argue that plaintiff's allegations following his reassignment to Headquarters amount to "nothing more than the recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)." Bermudez v. City of New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011). Plaintiff here, again, has failed to respond to defendants' arguments, and as summarized above, instead used his response to discuss Frank Serpico. Just as above, plaintiff's failure to oppose these arguments means that he has abandoned them. Cortes, 148 F. Supp. 3d at 255; see also Thomas v. N.Y.C. Dep't of Educ., 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed'") (collecting cases); Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F. Supp. 895, 907 n. 11 (S.D.N.Y. 1997) ("[T]he failure to provide argument

10

on a point at issue constitutes abandonment of the issue . . . which provides an independent basis for dismissal.").

Even if the claims were not abandoned, they fail independently. Retaliation is actionable under Title VII when the plaintiff "engaged in a protected activity, such as complaining about race discrimination" and, as a result, his employer took an adverse action in retaliation. See Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse [retaliatory] action; and (4) a causal connection between the protected activity and the adverse employment action." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (quoting Jute v. Hamilton Sunstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)). While plaintiff need not establish a *prima facie* case to survive a motion to dismiss, "the court should still consider the elements of a *prima facie* case of retaliation in making a determination of whether a plaintiff's complaint gives a defendant fair notice of the grounds of his claim." Corbett v. Napolitano, 897 F. Supp. 2d 96, 111 (E.D.N.Y. 2012). Plaintiff's complaint and his opposition to the instant motions set forth the instances of perceived mistreatment that he suffered while working at the FDNY, but "Title VII is not a general bad acts statute." Wimmer v. Suffolk Cty. Police Dep't, 176 F.3d 125, 135 (2d Cir. 1999) (quotation omitted). Plaintiff has done nothing more than allege disparate bad acts that neither separately nor together amount to a viable claim.

First, with respect to the July 2013 incident where plaintiff sustained burns to his body during a retraining exercise, plaintiff describes the event as retaliatory, but he has come nowhere close to alleging any of the elements of retaliation. During oral argument, plaintiff acknowledged that the claim was not intentional, conceded that it was not actionable, and

11

abandoned the claim, instead characterizing the episode as included for the sake of historical context. Given that plaintiff has abandoned his argument with respect to the July 2013 injury, the Court dismisses all claim against the City arising from this incident.

Second, moving on to the remaining two incidents, the rescission of the transfer and the termination, plaintiff has failed to allege that either was retaliatory. To demonstrate an adverse action, "'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). By requiring a showing of material adversity, Burlington preserves the principle that Title VII "does not set forth a general civility code for the American workplace." Burlington, 548 U.S. at 68, 126 S. Ct. at 2415 (internal quotation marks omitted). "[P]etty slights or minor annoyances that often take place at work and that all employees experience" do not constitute actionable retaliation. Id.

Regarding the rescission of the transfer back to plaintiff's Ladder, even if the Court accepts for argument's sake that the rescission could be an adverse action, plaintiff has not pled any causal connection between that action and plaintiff's EEO complaints in 2008 and 2010. Claims of retaliation require facts supporting an inference that there is "a causal connection between the protected activity and that adverse action." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (*per curiam*). "'[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory

12

animus.'" Hicks, 593 F.3d at 170 (quoting Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).

Here, plaintiff cannot connect his protected activity to the rescission. First, he cannot show indirect causation as the rescission came three years after the protected activity at the shortest and five years at the longest. Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (finding that a "temporal gap of almost two years between the date of [the] protected activity and the alleged retaliation [to be] too great to give rise to an inference of causation"); see also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close" and action taken "20 months later suggests, by itself, no causality at all."). Accordingly, three to five years is far too long to argue causation.

Further, plaintiff has failed to provide the alternative indirect causation pleading: He has not pled any factual allegation relating to the treatment of other employees who engaged in similar conduct to plead indirect causation. Second, plaintiff has failed to plead direct causation through retaliatory animus. He alleges retaliation in conclusory fashion, but a conclusory allegation that the action was retaliation is not sufficient under either Twombly or Iqbal. Accordingly, plaintiff's retaliation claims arising from the rescission of the transfer are dismissed for failure to state a claim.

For the same reasons as above, plaintiff has failed to plead any causation between his termination and his EEO activity. His termination came in 2014, which means his termination was four years after the protected activity at the shortest and six years at the longest. This is

13

again far too long to demonstrate causation. Summa, 708 F.3d at 128; Clark Cty. Sch. Dist., 532 U.S. at 273-74, 121 S. Ct. at 1511. Plaintiff has not alleged any circumstantial facts either, nor has he pleaded retaliatory animus apart from bare legal conclusions of retaliation. Finally, plaintiff cannot tie his termination to his 2014 EEO complaint, as plaintiff references his termination in the EEO complaint such that it is quite apparent that his termination was not a result of the 2014 complaint. As a result, plaintiff's retaliation claims arising from his termination are also dismissed for failure to state a claim.

V.     **Supplemental Jurisdiction and Plaintiff's State Law Claims**

Having dismissed all of plaintiff's federal claims, the Court considers whether to exercise supplemental jurisdiction over plaintiff's claims under NYSHRL and NYCHRL. 28 U.S.C. § 1367(c)(3). Plaintiff's NYSHRL claims are subject to the same standard as claims under Title VII, and as a result, are dismissed with prejudice for the same reasons that his federal claims are dismissed. See, e.g., Kelly, 716 F.3d at 14. NYCHRL, however, has a lower threshold of proof than its federal counterparts; therefore, the claims cannot be dismissed on the merits like the NYSHRL claims. See, e.g., Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102 (2d Cir. 2013). As a result, plaintiff's NYCHRL claims are dismissed without prejudice to refiling in state court.

## CONCLUSION

Plaintiff's federal and NYSHRL claims are dismissed with prejudice, and plaintiff's NYCHRL claims are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                                  U.S.D.J.

Dated: Brooklyn, New York
         October 21, 2016